UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                          )<br>)<br>MARY L. LANDRY                    ) | CR-08-186-B-W |

**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL**

On January 27, 2009, after a two-day trial, a jury convicted Mary L. Landry of multiple offenses involving identity theft and fraud. On February 3, 2009, Ms. Landry moved for new trial based solely on a claim of error in the admission of Federal Rule of Evidence 404(b) evidence. The Court denies her motion.

**I.    STATEMENT OF FACTS**

    **A.    Superseding Indictment**

On December 2, 2008, a federal grand jury returned a nine-count Superseding Indictment charging Ms. Landry with three counts of wire fraud, three counts of aggravated identity theft, two counts of social security fraud, and one count of credit card fraud.[1] *Superseding Indictment* (Docket # 37). The Government alleged that during her work as a billing representative for Verizon, Mary L. Landry acquired Admiral Mary *E.* Landry's social security number and other identifying information, which she used to apply for three credit cards from April through late May of 2007. *Id.* The Government further alleged that Ms. Landry committed the charged offenses with the specific intent to defraud or deceive, and that she succeeded in obtaining property with one of the cards. *Id.*

---

[1] The original Indictment was returned on October 9, 2008. *Indictment* (Docket # 3).

### B.  A Good Faith Defense and the Government's Motion *in Limine*

In advance of trial, on December 30, 2008, the Government and Ms. Landry filed proposed jury instructions.  *Gov't's Requested Jury Instructions* (Docket # 46); *Def. Mary Landry's Proposed Jury Instructions* (Docket # 48) (*Def.'s Instructions*).  As each charged crime requires proof of specific intent to deceive or defraud, Ms. Landry requested that the Court instruct the jury that it may consider her good faith in deciding whether the Government had met its burden.  *Def.'s Instructions* at 4 (citing *United States v. Goodchild*, 25 F.3d 55, 59-60 (1st Cir. 1994)).  The Government objected, *Obj. of the United States of America to the Def.'s Proposed Jury Instruction No. 3* (Docket # 59), and, anticipating that Ms. Landry would raise a good faith defense, moved *in limine* to introduce certain evidence pursuant to Rule 404(b) that might tend to refute it.  *Mot.* in Limine *of the United States for a Ruling Permitting the Government to Introduce Evidence Under Fed. R. Evid. 404(b)* (Docket # 63) (*Gov't's Mot.* in Limine).  The Government sought to admit testimony by Bangor Police Officer Steve Jordan that on June 18, 2008—a year after the alleged offense conduct and months before the Superseding Indictment—he stopped Ms. Landry for a moving violation and, in response to his request for personal identification, Ms. Landry provided a false name, social security number, and date of birth.  *Id.* at 1-2.

### C.  Granting the Government's Motion *in Limine*

Because the admissibility of Officer Jordan's testimony depended upon developments at trial, the Court declined to issue a pre-trial ruling on the Government's motion *in limine*.  The Court allowed counsel to argue its merits after opening statements and, after some preliminary witnesses had testified, the Court ruled that the evidence was admissible under Rule 404(b).

### D. Ms. Landry's Motion for New Trial

Ms. Landry's motion for new trial, which is based solely on the Court's Rule 404(b) ruling, essentially restates her arguments at trial. *See Def.'s Mot. for New Trial F.R.Crim.P. 33* (Docket # 79) (*Def.'s Mot.*). To reevaluate these arguments, it is necessary to summarize the parties' opening statements and the evidence up to when the Rule 404(b) evidence was proffered.

## II. THE TRIAL

### A. The Opening Statements

#### 1. The Government's Opening

In his Opening Statement, the Government's Attorney claimed that when she worked at Verizon and/or at MBNA, the Defendant obtained Admiral Landry's personal identifying information, including her social security number, and that using the Admiral's private information, the Defendant applied for credit cards at Discover, Chase, and Fashion Bug. Based on this false information, Chase, but not Discover and not Fashion Bug, authorized the issuance of a credit card, which the Defendant then used to make purchases.

#### 2. The Defendant's Opening

In his Opening Statement, Ms. Landry's Attorney said that the evidence would show that Ms. Landry responded to credit card offers from Discover and Chase that she received in the mail by applying to each on-line. Discover denied her application because of a discrepancy between the home address of the Mary Landry in its database and the Defendant's home address, but Chase issued a credit card. Defense counsel said that the evidence would show that she first became aware of a problem with the Chase card when she attempted to charge a muffler repair and payment was denied. When she called Chase, she was asked the last four digits of her social

security number, and she gave her own number. She was told the number did not match the social security number on file.

Turning to the Fashion Bug credit card application, Ms. Landry's counsel also said that the Defendant had used the Chase credit card to make a Fashion Bug purchase, and when she shortly thereafter applied for a Fashion Bug credit card, the Fashion Bug computer commingled the data from her Chase card with the correct information on the Fashion Bug application. The result was her application was denied.

He characterized the critical question as whether the Government could prove a knowing, willing intent to defraud or whether the credit card problems were simply a mistake which occurred because the credit card companies crossed the Mary Landry names due to computer errors.

### B. The Government's Case Before Admission of the Rule 404(b) Evidence

#### 1. Admiral Landry's Fraud Alert

The Government's first witness was Mary *E.* Landry, an Admiral in the United States Coast Guard, who was born in 1956 and whose social security number is XXX-XX-9402.[2] Admiral Landry testified that Discover Bank, with which she had never had a relationship, alerted her in 2007 that someone was using her social security number to obtain a Discover credit card. In response, she put a fraud alert on her social security number with the Social Security Administration, contacted the local police, and signed up with a credit monitoring bureau.

The last measure soon bore fruit. Admiral Landry discovered that someone had used her name and social security number to apply for and obtain a Chase credit card, and nearly $6,000

---

[2] The parties stipulated that social security number XXX-XX-9402 is assigned to Admiral Mary E. Landry by the Commissioner of the Social Security Administration, and that Defendant Mary L. Landry did not have authority to use it. To avoid confusion, the Court will refer to Defendant Mary L. Landry as "Ms. Landry," and to Admiral Mary E. Landry as "Admiral Landry."

worth of goods and services had been purchased; in addition, she learned that someone had used similar information to apply for a Fashion Bug credit card issued by Spirit of America National Bank. She contacted these institutions, denied making the purchases, and cancelled the cards, claiming they were fraudulently acquired. Admiral Landry testified that in January 2000, in connection with setting up cable, telephone, and DSL services in Massachusetts, she provided Verizon with her name, social security number, and date of birth. She also explained that at some point in 2000, she applied for and acquired a credit card from MBNA, to which she provided her social security number and date of birth.

### 2.   Ms. Landry's Opportunity and Access

The parties stipulated that MBNA employed Ms. Landry as a customer assistance account manager from December 22, 2001 to October 21, 2003. In this position, she had access to MBNA card-holders' social security numbers and dates of birth. In addition, Tamson Tracy, a Verizon employee, testified that Ms. Landry began working at Verizon in November 2005, and that she was a service representative in April 2007. In that capacity, Ms. Landry fielded calls from new and existing customers regarding Verizon services. Ms. Tracy explained that a new customer would have to provide his or her name, billing address, service address, date of birth, and social security number upon opening an account with Verizon. She also confirmed that Admiral Landry of Belmont, Massachusetts, was a Verizon customer from June 2000 to November 2006. Even though Admiral Landry's account was closed in 2006, pursuant to its routine practice of retaining prior customers' information, as of April 2007, Verizon still had in its database her personal identifying information. Ms. Tracy agreed that as a service representative, Ms. Landry had access to Admiral Landry's social security number.

### 3.      The Investigation—Chase, Discover, and Fashion Bug

Detective Gary Long of the Belmont, Massachusetts Police Department, and Daniel Bradford, special agent with the Coast Guard Investigative Service, investigated Admiral Landry's complaints of identity theft. Detective Long recalled that during the course of his investigation, in response to his inquiry with police in Bangor, Maine, he received a call from Ms. Landry of Bangor on June 5, 2007. Detective Long recounted that he told Ms. Landry that Admiral Landry had reported her identity was stolen and that someone had been using a credit card acquired with her social security number. In response, Ms. Landry admitted to currently using a Visa credit card issued by Chase (card number ending in 3827), which she had applied for over the Internet with her own name, date of birth (1965), and social security number (XXX-XX-8941).

Special Agent Bradford said that he discovered someone had submitted applications for Chase, Discover, and Fashion Bug credit cards with Admiral Landry's social security number. Without objection, the Court admitted these applications in evidence.[3] The Chase application, submitted over the Internet, included Ms. Landry's address in Bangor, Admiral Landry's date of birth (1956), and Admiral Landry's social security number (XXX-XX-9402). The Discover card application, also submitted over the Internet, likewise included Ms. Landry's address in Bangor, Admiral Landry's date of birth (1956), and Admiral Landry's social security number (XXX-XX-9402). Finally, the Fashion Bug application included Ms. Landry's name (with the correct middle initial "L."), Ms. Landry's date of birth (1965), and Admiral Landry's social security

---

[3] Christopher Jones, an expert for Ms. Landry, testified that because Ms. Landry submitted the Chase and Discover applications over the Internet, the format in which they were admitted in evidence is not necessarily the format in which Ms. Landry submitted them. For example, in their stipulation as to the admissibility of the Chase application, the parties describe it as the Chase Bank On-Line Application Viewing Screen. *Stipulation No.* 5. According to George McCloud, a Chase employee, the Chase application admitted in evidence is a hard-copy of the archived record of an Internet application. Instead of objecting to the admissibility of the applications on this basis, defense counsel chose to explore the possibility that Ms. Landry did not submit all the information that appeared on the applications.

number (XXX-XX-9402). Special Agent Bradford also explained that he learned during the course of his investigation that Ms. Landry was under some financial strain at the time. He said that he was familiar with a wage garnishment order in the amount of $60,935.90 issued by the United States Department of Education on December 30, 2006, and received by Verizon, Ms. Landry's employer, on January 9, 2007.

### a. The Fashion Bug Application

Special Agent Bradford and Erin Padham, a former sales clerk at the Fashion Bug store in Bangor, Maine, explained how customers apply for Fashion Bug credit cards. Generally, an interested customer provides the sales clerk with a driver's license or other photographic identification. The clerk enters into a computer the customer's name, address, and date of birth gleaned from that identification, and asks the customer to enter his or her social security number on an electronic keypad situated on the sales counter. Special Agent Bradford applied for a Fashion Bug card in this manner, but he experimented with the keypad. When prompted to do so by the sales clerk, he entered a social security number consisting of all nines. The sales clerk received an error message, and the transaction went no further.[4]

Although Ms. Padham, who worked at the Fashion Bug from May to July 2007, had no specific memory of it, she confirmed that a Visa credit card with the last four digits 3827 was used to purchase items at Fashion Bug on May 25, 2007. Ms. Padham also confirmed that an application for a Fashion Bug credit card was submitted on that date. She explained that although it is possible for the store to extract the applicant's date of birth, address, and phone

---

[4] This bears a word of explanation. Although the entry of all nines into the credit card companies' computers had not been placed in evidence at the time of the evidentiary ruling, during the argument, the prosecutor asserted that Ms. Landry would testify that when she applied for these credit cards, she inserted all nines in the social security fields instead of her social security number. This defense had been raised the week before at a *Daubert* hearing concerning the qualifications of a defense computer expert. During the argument on the admissibility of the Rule 404(b) evidence, defense counsel confirmed that if his client testified, she would say that she had entered all nines into the social security fields for these credit card applications. Special Agent Bradford's testimony anticipated this defense.

7

number from a credit card used for a contemporaneous purchase, it was not possible to extract the applicant's social security number from a credit card.

### b.   The Chase Application

George McCloud, a fraud strategy design analyst and Chase employee, is responsible for the review and identification of processes and software that enables Chase to identify fraudulent or potentially fraudulent requests for credit. He reviewed an archival record of the Chase credit card application in the name of "Mary Landry," which Chase received over the Internet on April 18, 2007; he confirmed the application included Ms. Landry's Bangor address, Admiral Landry's date of birth (1956), and Admiral Landry's social security number (XXX-XX-9402). He explained that although Chase would have added some information to the application after it was received and processed, the applicant would have entered her name, address, date of birth, social security number, phone numbers, and employment and salary information.[5]

Mr. McCloud also testified that in 2007, Chase sometimes solicited potential customers to apply for credit cards. He said that if an applicant submitted an application in response to a solicitation, the application would indicate this fact by including a solicitation number. But, even if an applicant had a solicitation number, the applicant would still have to input his or her own social security number and date of birth; neither would be automatically inserted by Chase's computers. The "Mary Landry" application, however, included no solicitation number, which led Mr. McCloud to conclude that the application was unsolicited.

Mr. McCloud explained that upon receiving the "Mary Landry" application, Chase sent it to a credit bureau, which matched that application with the name "Mary E. Landry," Admiral Landry's Belmont address, Admiral Landry's date of birth (1956), and Admiral Landry's social

---

[5] Mr. McCloud testified that federal regulations require Chase to maintain a record of an applicant's original request for credit, and that the Chase application he reviewed is such a record.

security number (XXX-XX-9402). Mr. McCloud said that Chase was not concerned by the address discrepancy between the application and the bureau's response because people move, and the bureau information often lags behind the move. Thus, in Chase's view, "Mary Landry" could very well have recently moved to Bangor, Maine. Accordingly, Chase issued the credit card and, just over a month later, received and approved a request for a credit line increase on the account.

Mr. McCloud also clarified that only the applicant—not Chase employees or computer programs, the credit bureau, or anyone else—was responsible for the inclusion of Admiral Landry's social security on the "Mary Landry" Chase application. He testified with absolute certainty that if an applicant had attempted to enter a social security number consisting of all nines, the application would not have gone to Chase for processing. He was equally sure that this did not occur in connection with the "Mary Landry" application.

### C. The Parties' Contentions Regarding Rule 404(b) Evidence

When the parties argued whether Officer Jordan's testimony should be admitted, the Government contended that his testimony was admissible under Rule 404(b) as proof of Ms. Landry's intent, state of mind, and the absence of mistake or accident. The Government further argued that the probative value of the evidence, if admitted subject to an appropriate limiting instruction, would not be substantially outweighed by the danger of unfair prejudice.

Defense counsel objected. Citing the lapse of time between the alleged offense conduct and the traffic stop, counsel explained that although Officer Jordan's testimony may be probative of Ms. Landry's state of mind on June 18, 2008, it was irrelevant to her state of mind during the April–June 2007 time frame alleged in the Superseding Indictment. Counsel also contended that given the marginal probative value of the evidence, it was substantially outweighed by unfair

prejudice to Ms. Landry. Counsel conceded, however, as he had explained to the jury in his opening statement, that one of Ms. Landry's defenses was that she had acted in good faith and that the alleged identity theft was the result of computer error for which Ms. Landry was not responsible.

Against this background, the Court granted the Government's motion and permitted the Government to elicit testimony from Officer Jordan regarding the traffic stop and Ms. Landry's provision of false personal information.[6] The Court first explained that by telling the jury she had acted in good faith and that the Government allegations of fraud were based on computer error, Ms. Landry had opened the door to the Government's proffered Rule 404(b) evidence. The Court reasoned that Officer Jordan's testimony could belie Ms. Landry's claim that she did not provide a false social security number to three different credit card companies on other occasions. Noting that Rule 404(b) allows for the admission of evidence of other acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Fed. R. Evid. 404(b), the Court concluded that the evidence was admissible subject to an appropriate limiting instruction.

## D. The 2008 Bangor Traffic Stop—Rule 404(b) Evidence

Steven Jordan, patrol officer for the City of Bangor Police Department, testified that on June 18, 2008, he stopped a woman who turned out to be Ms. Landry for committing a moving violation at an intersection in Bangor. Officer Jordan said that in response to his request for identification, Mary Landry initially claimed that her name was Cheryl Landry, that she was born in 1963, and that her social security number was XXX-XX-6321.[7] Through communications

---

[6] Because the Government moved for the admission of this evidence a reasonable time before trial, proper notice under Rule 404(b) was not an issue.
[7] John Cremonini, a criminal investigator for the Office of Inspector General for Social Security, later testified that this social security number is assigned to neither Ms. Landry nor Admiral Landry.

10

with his colleagues, Officer Jordan was able to determine that he had, in fact, stopped the Defendant: the vehicle she was driving was registered to Mary Landry; she matched the dispatcher's verbal description of Mary Landry; she also matched a booking photograph of Mary Landry; and, apparently, Officer Jordan was able to observe an abdominal scar consistent with an on-file physical description of Mary Landry. Concluding that the driver was Mary Landry, and knowing that her license was suspended, Officer Jordan arrested her and took her to the Penobscot County Jail. He testified that while she was being arrested, the Defendant told him that he would have to prove that she was actually Mary Landry.

On cross-examination, Officer Jordan said that Ms. Landry was reasonably polite throughout the incident. He also recalled that she eventually signed both tickets in her real name and, upon being confronted with evidence of her real identity including previously acquired fingerprints, she admitted to being Mary Landry.

### E. The Limiting Instruction

Directly after Officer Jordan testified, the Court gave the following limiting instruction:

> Ladies and gentlemen, as you've just heard, the Government has just offered evidence that, if believed, would tend to show that at a different time the Defendant provided false information to a police officer regarding her identity. You may remember that at the outset of this trial, I told you that there were going to be or might be some instances in which evidence can be received for a limited purpose only. This is one of those incidents.
> First, I would remind you that Ms. Landry is not on trial today for the actions that took place at some other time and is specifically not on trial for whatever happened at that traffic stop. Further, ladies and gentlemen, you may not consider this evidence to demonstrate that the Defendant is a bad person or has some kind of criminal personality. That would be inappropriate.
> I am going to tell you how you may consider this evidence. You may consider the evidence for the following reasons: One, whether the Defendant had the requisite state of mind or intent to commit the crimes that are charged in the Superseding Indictment that are before you; two, whether the Defendant had a motive or opportunity to commit the acts charged in the Indictment; three, whether the Defendant acted according to a plan or in preparation for commission

of the crimes charged in the Indictment; and, four, whether the Defendant committed the acts for which she is on trial by accident or mistake.

Remember that these are the only purposes for which you may consider the evidence that has just been introduced, not as evidence of character to support an inference that the Defendant committed the acts charged in the Superseding Indictment. Finally, ladies and gentlemen, it is up to you, as members of the jury, to determine how to weigh this evidence and even whether to consider it at all for the limited purposes that I have described.

### III.     DISCUSSION

#### A.     The Legal Standard

Federal Rule of Criminal Procedure 33(a) provides, in part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In general, a "district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). On the other hand, there are "definite limits upon a district court's right to upset a jury verdict." *Id.* at 322. The First Circuit has explained that the "remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996) (quoting *United States v. Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979)). The standards for a Rule 33 motion are rigorous. *Rothrock*, 806 F.2d at 322 ("[A] trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result."); *see United States v. Maldonado-Rivera*, 489 F.3d 60, 65-66 (1st Cir. 2007) (setting forth the criteria for granting a new trial based on new evidence); *United States v. Rivera Rangel*, 396 F.3d 476, 485-86 (1st Cir. 2005) (setting forth the criteria for a new trial based on a Brady violation).

#### B.     The Rule 404(b) Framework—Probative Value and Prejudicial Effect

Alleging that she is entitled to a new trial because the Court admitted Officer Jordan's testimony pursuant to Rule 404(b), Ms. Landry must show that the Court "thereby committed 'grave errors,' justifying a new trial." *United States v. Newbert*, 532 F. Supp. 2d 200, 202 (D. Me. 2008) (quoting *Andrade*, 94 F.3d at 14). Whether the Court committed grave errors depends on whether the Court's Rule 404(b) ruling was erroneous, and, if so, whether it affected Ms. Landry's substantial rights. *See United States v. Ofray-Campos*, 534 F.3d 1, 35 (1st Cir. 2008); *United States v. Flores Perez*, 849 F.2d 1, 8 (1st Cir. 1988); 3 Charles Alan Wright, *Federal Practice and Procedure: Criminal* § 551 (2d ed. 1982) (counseling courts to "hold in mind the harmless error provisions of Rule 52, and refuse to grant a new trial if the substantial rights of the defendant were not affected").

> Rule 404(b) provides in part:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). "'The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material fact *other than character*.'" *United States v. Oppon*, 863 F.2d 141, 146 (1st Cir. 1988) (emphasis in original) (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). Accordingly, the First Circuit analyzes the admissibility of 404(b) evidence pursuant to a two-pronged framework. *United States v. DeCicco*, 439 F.3d 36, 50 (1st Cir. 2006); *United States v. Sebaggala*, 256 F.3d 59, 67 (1st Cir. 2001); *United States v. Mahone*, 328 F. Supp. 2d 77, 85-86 (D. Me. 2004). Under the first prong, "the proffered evidence must not merely show a defendant's reprehensible character or predisposition towards knavery, but, rather, must possess some special relevance to a disputed issue in the case." *Sebaggala*, 256 F.3d at 67. Under the second prong, because Rule 404(b)

"incorporates *sub silentio* the prophylaxis of . . . Rule 403," even if the evidence has some special relevance, it must be excluded if "its likely prejudicial impact substantially outweighs its likely probative worth." *Id.*

Ms. Landry presses the same three arguments she made at trial against the admissibility of this Rule 404(b) evidence:  (1) remoteness in time; (2) dissimilarity; and, (3) prejudicial impact.  Regarding timing, Ms. Landry contends that the June 18, 2008 incident Officer Jordan described is too far removed from the April–June 2007 period during which the charged offenses took place.  She also contends that providing false information to a police officer during a traffic stop is too dissimilar to acquiring someone else's social security number and using that information to apply for credit cards with intent to defraud.  Branding Officer Jordan's testimony as simply "bad character" evidence that invited propensity reasoning, *see* Fed. R. Evid. 404(a), Ms. Landry claims the Court should have excluded it pursuant to Rule 403.  *Def.'s Mot.* at 3.  Additionally, observing that the Government stressed the incident during closing argument and cross-examined her and two of her witnesses about it, Ms. Landry concludes that "it is highly likely that this 'bad act' evidence influenced the jury."  *Id.*

The Government makes several arguments in response.  The Government claims Ms. Landry opened the door to Officer Jordan's testimony by stating that the alleged fraud can be explained by computer error, and denying that Ms. Landry ever used Admiral Landry's social security number in connection with a credit card application.  The Government also contends, as a general matter, that Officer Jordan's testimony was "specially probative of [Ms. Landry's] intent and frame of mind as well as of the absence of any mistake or accident."  *Resp. of the United States to Def.'s Mot. for New Trial* at 5 (Docket # 81) (*Gov't's Resp.*).  More specifically, the Government says that Officer Jordan's testimony proves that Ms. Landry "may have

14

possessed the requisite intent to engage in deception and fraud." *Id.* at 9. The Government also claims that the testimony proves the absence of two different mistakes: it shows that Ms. Landry was not "mistaken but was predisposed to provide false information when required to identify herself," *id.* at 6, and it shows "the absence of any mistake or accident on the part of credit card employees and computer systems used to process the applications submitted by the defendant." *Id.* at 9. The Government concludes by noting that should the Court determine it erred by admitting Officer Jordan's testimony, it should find the error was harmless because it is highly probable that it did not change the outcome of the trial. *Id.*

### 1. A Question of Timing

Ms. Landry is correct that the probative value of Officer Jordan's testimony "'must be considered in light of the remoteness in time of the . . . [traffic stop] and the degree of resemblance to the crime charged.'" *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996) (quoting *United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989)). The First Circuit has explained that "if the acts admitted under rule 404(b) are too remote in time, this substantially weakens their probative value and weighs in favor of exclusion." *Fields*, 871 F.2d at 198. Further, the First Circuit has cautioned that remoteness is a special concern where, as here, the Rule 404(b) evidence is "probative of intent." *Id.*

The first question is what the relevant period is. Officer Jordan testified that the traffic stop occurred on June 18, 2008. The Government claimed that on April 18, 2007, Ms. Landry submitted the credit card application to Chase with Admiral Landry's social security number, and that she continued using the Chase card until June 4, 2007. Since the alleged fraud continued until the day she stopped using the Chase card, the relevant period is a year and two weeks.

15

The First Circuit has upheld the admission of Rule 404(b) evidence much more remote in time from the charged offenses than is the case here. *United States v. DeCicco*, 370 F.3d 203, 212 (1st Cir. 2004) (reversing a district court order excluding evidence of an intentionally set fire in 1992 in the trial on charges relating to allegations of an intentionally set fire in 1995, stating that "three years is not so remote a time as to reduce the probative value of this evidence"); *Frankhauser*, 80 F.3d at 649 (time span of seven years is not too remote); *United States v. Hadfield*, 918 F.2d 987, 994 (1st Cir. 1990) (five years between prior bad act and charged act is acceptable). Consistent with these cases, the Court concludes that the temporal gap between the charged conduct and the Rule 404(b) conduct is sufficiently close in time to be probative of intent.

### 2. Special Relevance to a Disputed Issue

The Court is satisfied that Officer Jordan's testimony is "specially probative of an issue in the case . . . without including bad character or propensity as a necessary link in the inferential chain." *Frankhauser*, 80 F.3d at 648; *see Fields*, 871 F.2d at 196 (noting that Rule 404(b) is a rule "of inclusion which allows the introduction of evidence of other crimes, wrongs, or acts unless the evidence tends to only prove criminal disposition"); *but see United States v. Varoudakis*, 233 F.3d 113, 125 n.11 (1st Cir. 2000) (noting that the First Circuit has referred to Rule 404(b) as a rule of both inclusion and exclusion). There is no doubt that Ms. Landry's intent was an issue at trial. Six of the nine counts in the Superseding Indictment required the Government to prove that Ms. Landry acted with the intent to either defraud (wire and access device fraud) or deceive (social security fraud); the remaining three counts of aggravated identity theft required proof of the underlying access device and social security fraud offenses.

Ms. Landry's primary defense to the charge that she committed identity fraud and theft was that the Government could not prove she intentionally supplied private identifying information, including a social security number, of another person named Landry to the credit card companies to mislead them as to her true identity. Here, the Government produced evidence that within approximately one year, Ms. Landry intentionally used personal identifying information, including a social security number, that was not assigned to her to mislead a police officer as to her true identity. From the Court's perspective, the circumstances surrounding the June 18, 2008 traffic stop easily pass the special relevance prong of the First Circuit's Rule 404(b) test. *See United States v. Washington*, 434 F.3d 7, 12 (1st Cir. 2006) (upholding the admission of evidence of a traffic stop, where the Defendant's defense was mistaken identity and during the stop, the police officer connected the Defendant's true name with an alias he had been using).

### 3. Weighing Prejudicial Effect

Pursuant to Rule 403, which is incorporated into the second prong of the Rule 404(b) framework, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *Sebaggala*, 256 F.3d at 67. "'The prejudice to an opponent can be said to be unfair when the proponent of the evidence could prove the fact by other, non-prejudicial evidence.'" *Varoudakis*, 233 F.3d at 122 (quoting 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5214, at 269 (1978)). Rule 403 also protects defendants from "unfair prejudice resulting from criminal propensity evidence." *Id.* (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Accordingly, the First Circuit has instructed courts to analyze the risk of an improper propensity interference "in light of the totality of the circumstances, including the government's need for the

evidence given other available testimony, to prove the issue identified pursuant to the 404(b) special relevance analysis." *Id.*

Ms. Landry claims that the risk of propensity reasoning in this case was high. The Court disagrees. Ms. Landry's subsequent act—a false statement to a police officer that failed to deceive him and was soon voluntarily cured—is not likely to so thoroughly condemn Ms. Landry in the minds of the jurors that they would convict her solely based on emotion, propensity, or "bad character" reasoning.

### 4. Limiting Instruction

As earlier described, the Court gave an extensive limiting instruction to reduce the risk of unfair prejudice resulting from Officer Jordan's testimony. *See United States v. Santana*, 342 F.3d 60, 67 (1st Cir. 2003). "[O]ur system of trial by jury is premised on the assumption that jurors will scrupulously follow the court's instruction." *United States v. Riccio*, 529 F.3d 40, 45-46 (1st Cir. 2008) (internal quotation omitted)).

## IV. CONCLUSION

Having determined that it did not commit evidentiary error as Ms. Landry claims, the Court concludes that the interest of justice does not require a new trial pursuant to Rule 33, and therefore DENIES Defendant's Motion for New Trial F.R.Crim.P. 33 (Docket # 79).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 16th day of April, 2009